NEW YORK PUBLIC INTEREST RE-
SEARCH GROUP, INC., Donald K. Ross
and Fred Downey, Plaintiffs,

v.

VILLAGE OF ROSLYN ESTATES, Rob-
ert D. Zucker, as Mayor of the Village of
Roslyn Estates, and Marie J. Pariante,
as Village Clerk of the Village of Roslyn
Estates, Defendants.

NEW YORK PUBLIC INTEREST RE-
SEARCH GROUP, INC., Donald K.
Ross, and Fred Downey, Plaintiffs,

v.

VILLAGE OF LAWRENCE and Peter
W. Overs, as Clerk-Treasurer of the
Village of Lawrence, Defendants.

NEW YORK PUBLIC INTEREST RE-
SEARCH GROUP, INC., Donald K. Ross
and Fred Downey, Plaintiffs,

v.

VILLAGE OF GARDEN CITY, James F.
Cooley, as Mayor of the Village of Gar-
den City, and Raymond J. Regan, War-
ren Wytzka, Daniel V. Duff, William O.
Dwyer, Peter E. Gall, George A. Nagel,
Jr. and Raymond Stuart, as members of
the Board of Trustees of the Village of
Garden City, Defendants.

Nos. 79 C 875 to 79 C 877.

United States District Court,
E. D. New York.

Aug. 28, 1979.

Dennis A. Kaufman, Albany, N. Y., for plaintiffs.

Farrell, Fritz, Caemmerer & Cleary, P. C., Williston Park, N. Y., for defendants Village of Roslyn Estates, et al.

Blum, Ross, Weisler, Bergstein & Golden, Lawrence, N. Y., for defendants Village of Lawrence, et al.

Cullen & Dykman, Garden City, N. Y., for defendants Village of Garden City, et al.

*Memorandum of Decision and Order*

MISHLER, Chief Judge.

## I. *Introduction*

The plaintiff in each of these three related cases is the New York Public Interest Research Group, Inc. ("NYPIRG"), a not-for-profit corporation organized and operating under the laws of New York State.[1] As its name indicates, NYPIRG is involved in a variety of matters of public concern such as consumer protection, environmental policy, and political reform. Among other activities, it prepares research reports, lobbies before various legislative bodies, and educates the public as to its programs and the issues they concern. According to its verified complaints, "NYPIRG, as part of both its fund-raising and public education activities, conducts door-to-door canvassing in numerous localities throughout the State of New York." More specifically,

> [i]ndividual canvassers, all employees of NYPIRG, go door-to-door circulating petitions on current public policy issues, distributing consumer information, recruiting volunteers, suggesting methods by which citizens may participate in and affect public policy decisions, and collecting small monetary contributions for the growth and maintenance of the organization. Canvassers also [for a $15.00 membership fee] offer citizens the opportunity to become a member of NYPIRG, thereby entitling them to receive periodic newsletters and other printed material describing NYPIRG's activities and other issues of current political interest.

Apparently as a general practice, prior to canvassing a community, NYPIRG contacts officials of that community and seeks permission to conduct the canvass. As will be

---

1. NYPIRG possesses a letter of determination of tax-exemption from the Internal Revenue Service under 26 U.S.C. § 501(c)(4), and is registered as a charitable organization with the New York Secretary of State under the provisions of Article 7–A of the New York State Executive Law.

discussed in greater detail below, NYPIRG sought permission to canvass the villages of Roslyn Estates, Garden City, and Lawrence from officials of those communities. In each instance permission was denied, the officials finding authority for their actions in those local ordinances of each village which governed door-to-door solicitations. In response, NYPIRG [2] instituted these actions against each of the villages and the responsible officials, seeking an order enjoining enforcement of the ordinances and declaring them unconstitutional on their face and as applied as being violative of the first amendment.[3] Simultaneously, NYPIRG moved for a preliminary injunction restraining enforcement of the ordinances pending final resolution of the actions. The defendants in each case opposed the motion,[4] contending that the ordinances at issue were facially constitutional and had been applied to NYPIRG in a constitutional manner. In addition, the villages of Garden City and Lawrence claimed that the plaintiff should be denied relief since the actions against them do not meet the "case or controversy" requirement of Article III of the Constitution in that they do not raise issues which are "ripe" for adjudication. Arguments on the motions were heard on July 20, 1979.

While the ultimate issue in all three cases is identical, each case arises in a slightly different factual context. Accordingly, we shall discuss each action separately.

## II.  *NYPIRG v. Village of Garden City*

On August 2, 1978, Fred Downey, canvass director of NYPIRG, sent the Village Clerk of Garden City a letter requesting permission to canvass that community beginning some time between October 15, 1978 and November 15, 1978. The letter briefly explained NYPIRG's corporate status, purpose, and accomplishments. It stated that

"canvassing would entail circulating petitions, soliciting small contributions, distributing information, and recruiting support (letters, calls, participation) on a variety of Legislative and Administrative actions." Enclosed with the letter were "appropriate documents verifying" the letter's statements, as well as a "list of canvassers with dates of birth, Social Security numbers, and addresses."

On August 9, 1978, Earl P. Sandquist, the Village Administrator of Garden City, responded by a letter, which stated, in pertinent part:

Please be advised that under Village Ordinance 6.3 solicitation on private residential property in the Village is prohibited with certain exceptions, without the consent of the occupant of the premises previously given. If you wish to make an application to solicit in the Village without going from door to door, you must comply with the application procedure provided in Village Ordinance 6.7.

On January 4, 1979, Downey again wrote to Sandquist, once more asking permission to canvass, this time beginning on February 15, 1979 and ending on March 15 of that year. The letter restated what the purpose of the canvassing was and how it would be conducted. Again, documents establishing NYPIRG's *bona fides* were enclosed. In this letter, Mr. Downey also requested a "copy of any relevant solicitation ordinance or regulation." Having received no response, on January 25, Downey sent a short letter to Sandquist reiterating NYPIRG's request and advising Sandquist that if no reply were received within two weeks, "possible legal action" would be taken. Apparently, this letter crossed in the mail with one written by Sandquist on January 22 which stated:

---

2. In addition to NYPIRG, named as plaintiffs are Donald K. Ross, Executive Director of NYPIRG, and Fred Downey, the organization's Canvass Director.

3. Various additional claims, grounded, *inter alia*, on the due process and equal protection clauses of the fourteenth amendment, were

also raised. Except where these issues are discussed, *see* page 23 *infra*, we have not found it necessary to pass on these contentions.

4. The defendants in 79 C 877 have formally cross-moved pursuant to Fed.R.Civ.P. 12(b)(1), and 12(b)(6) to dismiss the complaint.

Your letter of January 4, 1979, requesting permission to conduct door-to-door canvassing in the Village of Garden City was presented to and denied by the Board of Trustees at its meeting last Thursday evening.

This suit against Garden City, its mayor, and the members of its Board of Trustees was instituted on April 3.

The ordinances at issue here, cited by Mr. Sandquist in his letter of August 8, 1978, are numbered 6.3 and 6.7. They hardly present paradigms of good draftsmanship; indeed, they seem inconsistent.

Ordinance 6.7, entitled "Soliciting Donations in Public" standing alone, seems straightforward enough. Section (a) provides:

> It shall be unlawful for any person, organization, society, association, company or corporation or their agents or representatives *to solicit donations of money* or property or financial assistance of any kind upon the streets, in office or business buildings, *by house-to-house canvass* or in public places in the Village *without a license issued pursuant to this ordinance.* (emphasis added).

According to section (b) of ordinance 6.7, an application for a license to solicit funds is to be made in writing to the Mayor and contain:

(1) Name, address and purpose of the cause for which permission to solicit is sought.

(2) Names and addresses of the officers and directors of the organization, firm, society, association, company or corporation.

(3) Time for which permission is sought and localities and places of solicitation.

(4) Whether or not any commissions, fees, wages or emoluments are to be expended in connection with such solicitation.

(5) Such other information as the Board of Trustees may require to determine the bona fide status of the applicant and whether the purpose of such solicitation is in the best interests of the Village and the public.

Pursuant to section (c) of the ordinance, the Mayor, after receiving the application, will present it to the Board of Trustees which will conduct an investigation of the applicant and the purpose and scope of the proposed canvassing. The Mayor or his designee will then issue the license if, after the investigation, the Board *"is satisfied that the purpose of the solicitation is in the best interests of the Village and the public . . . ."* (emphasis added). Section (d) goes on to state that the Board "may place reasonable restrictions on the granting of any such license to include, but not be limited to the hours of solicitation, the number of persons soliciting, the locality of such solicitation and the period for which such license is granted."

It would thus appear from the terms of 6.7 that were NYPIRG to have been issued a license, it would have been able to canvass door-to-door. This interpretation, however, would only be viable were the provisions of ordinance 6.3 to be ignored. This ordinance, entitled "Soliciting on Private Residential Property" provides, in section (a), that

> [n]o person shall enter upon any private residential property in the Village of Garden City for the purpose of vending, peddling or soliciting an order for any merchandise, device, *book, periodical or printed matter whatsoever; nor for the purpose of soliciting alms or a subscription* or a contribution *to any* church, *charitable or public institution; nor for the purpose of distributing any handbill, pamphlet, tract, notice,* advertising matter or *other like matter*; nor for the purpose of selling or distributing any ticket or chance whatsoever, *without the consent of the occupant of said premises previously given.* (emphasis added).

Section (b) of the ordinance states, however, that a solicitor may enter upon residential property, even without the permission of the owner, *if the solicitor* has obtained a license pursuant to 6.7, and if the individual actually conducting the solicitation has been a resident of the Village for

six consecutive months or if either he or the group he represents has maintained a place of business in the Village for that length of time.[5]

The Village, in a somewhat different interpretation than first advanced in the August 9, 1978 letter from Sandquist to Downey, now reads ordinances 6.3 and 6.7 together as providing the following: Under 6.7, NYPIRG may solicit in public places (but not door-to-door) if it receives a license. In addition, under 6.3(b), it could conduct a door-to-door solicitation without prior property owner consent if "[it:] (1) receive[s] a license under 6.7 *and* (2) use[s] canvassers who have been residents of the Village for six months." Defendant's Memorandum of Law, 15–16.

NYPIRG's constitutional attack is focused primarily on the licensing provisions of ordinance 6.7. More specifically, it claims that those provisions are overbroad, void for vagueness, and when implemented as they were here, serve as a prior restraint on first amendment rights. In addition, it asserts that because the licensing requirement is unconstitutional, ordinance 6.3, which predicates the right to canvass on the possession of a license, is similarly unconstitutional.

As indicated above, the Village urges that we decline to decide this question, arguing that we have not been presented with a "ripe" case or controversy. They claim that although NYPIRG requested permission to canvass it never formally applied for a license. If this is so, it cannot be said that the licensing provisions have yet been applied to it; thus, an attack on their validity is premature. Moreover, the Village claims that even if the court interprets NYPIRG's requests for permission to

canvass as having the same effect as a formal application for a license, the ordinances are still not subject to challenge at this time, since the Village has not yet attempted to enforce their provisions.[6] We reject these arguments.

The general principles to be applied in cases such as these were recently summarized by the Second Circuit in *St. Martin's Press, Inc. v. Carey*, 605 F.2d 41 (2d Cir. 1979):

> Federal courts have no power per se to declare statutes unconstitutional. *Massachusetts v. Mellon*, 262 U.S. 447, 488, 43 S.Ct. 597 [601], 67 L.Ed. 1078 (1923). The constitutional requirement of a justiciable controversy is met only where plaintiff has sustained, or is in immediate danger of sustaining, some direct injury as a result of which there arises an honest and active antagonistic assertion of rights. *O'Shea v. Littleton*, 414 U.S. 488, 493–95, 94 S.Ct. 669 [674–75], 38 L.Ed.2d 674 (1974); *Poe v. Ullman*, 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961). There must be a genuine threat of enforcement of a disputed state criminal statute before a case or controversy involving that statute may be said to exist. *Ellis v. Dyson*, 421 U.S. 426, 434, 95 S.Ct. 1691, 1696, 44 L.Ed.2d 274 (1975); *Steffel v. Thompson*, 415 U.S. 452, 475, 94 S.Ct. 1209 [1223], 39 L.Ed.2d 505 (1974); *Younger v. Harris*, 401 U.S. 37, 41–42, 91 S.Ct. 746 [749], 27 L.Ed.2d 669 (1971). For purposes of standing, "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 13–14, 92 S.Ct. 2318, 2325–2326, 33

---

5. An additional exception is provided for an individual who "is soliciting in behalf of a religious corporation of which he is a member and which has had a place of worship in the Village for a period of at least six (6) consecutive months prior 'to the proposed solicitation.'" 6.3(b).

6. Ordinance 6.8 provides:
   Unless otherwise provided by law or by specific enactment, the penalty for each viola-

tion of any part of this ordinance, classified as Chapter 6 [containing 6.7 and 6.3], shall be a sum of money not exceeding $250.00. In addition thereto, unless otherwise provided herein or by law, a violation of the same shall constitute and is hereby declared to be disorderly conduct and any person violating the same shall be and is hereby declared to be a disorderly person.

L.Ed.2d 154 (1972); *see Bigelow v. Virginia*, 421 U.S. 809, 816–17, 95 S.Ct. 2222 [2229–30], 44 L.Ed.2d 600 (1975).

In *St. Martin's Press*, individuals who proposed to publish and sell a book containing sexually-related material including nude photographs of children brought an action seeking a declaration that a New York criminal statute which prohibited the "promotion" of any "performance" that included "sexual conduct" by a child was unconstitutional on its face and could not be constitutionally applied to the publication and sale of the book. The district court issued a preliminary injunction restraining the state from enforcing the statute against the book. The Second Circuit reversed, holding that no case or controversy had been presented.

The Court rested its holding on the fact that the state authorities had neither threatened to prosecute nor actually prosecuted the plaintiffs under the challenged statute. Indeed, the state had "shown no interest in or concern over plaintiff's book." At 44. Moreover, there was a substantial question as to whether the challenged statute even applied to the plaintiffs' conduct. In short, there was simply "no reason to believe that [the defendants] intended to prosecute [plaintiffs] under [the statute] for disseminating their . . . work." *Id.* Being presented with no more than the plaintiffs' allegations that their proposed actions were prohibited by the criminal statute, the Second Circuit, applying those principles regarding ripeness which we have quoted above, found that it was improper to rule on the statute's validity.

Defendants rely on *St. Martin's Press* and *NYPIRG v. Town of Hempstead*, 78 C 2097 (E.D.N.Y. Feb. 1, 1979) (Neaher, J.) (unpublished opinion), in support of their claim of lack of case or controversy. The facts here, however, are sharply distinguishable from those of *St. Martin's Press.* Here, although there has not been a literal "threat" that prosecution will follow if the plaintiff canvasses without complying with the ordinances, the defendants, unlike those in *St. Martin's,* have taken affirmative action. In his letter of August 4, 1978, Sandquist, speaking on behalf of the Village, clearly stated that the ordinances at issue applied to and stood in the way of plaintiff's proposed canvassing. Moreover, notwithstanding defendants' present characterization of plaintiff's request for permission to canvass as having been something other than a formal application for a license,[7] we are constrained to believe that the defendants treated it as such an application and denied it. Indeed, the January 22 letter to NYPIRG advised the plaintiff that the request for permission had been presented to and rejected by the Board of Trustees—which was apparently in accordance with the procedure set out in ordinance 6.7(c) for determining whether license applications should be approved. Yet, even if it were not a formal application, our conclusion would not be altered. The situation here is clear. Defendants have advised plaintiff that it may not engage in the contemplated activity based on the above cited ordinances. Whether the statutes at issue have been formally applied to the plaintiffs or whether a "threat" has been made that the sanction for violating those statutes will be enforced, is of no significance.

We are dealing here with ordinances which allegedly have the facial effect of abridging first amendment rights. "In the area of freedom of expression it is well established that one has standing to challenge a statute on the ground that it delegates overly broad licensing discretion to an administrative office, whether or not his conduct could be proscribed by a properly drawn statute, and *whether or not he applied for a license.*" *Freedman v. Mary-*

7. Defendants contend that NYPIRG's communications cannot be viewed as license applications since they did not comport with the requirement in 6.7(b) that the applicant provide the names and addresses of its directors and advise the Village whether solicitors were to receive wages of their work. In view of the other information supplied by NYPIRG, the failure to provide this information shows no more than that the "application" was technically incomplete.

*land,* 380 U.S. 51, 56, 85 S.Ct. 734, 737, 13 L.Ed.2d 649 (1965) (emphasis added). While this rule has frequently been stated in the context of a case where an individual is seeking to challenge a statute's validity in the course of his appeal from a criminal conviction for violation of that statute, *see, e. g., Freedman v. Maryland, supra; Shuttlesworth v. Birmingham,* 394 U.S. 147, 151, 89 S.Ct. 935, 939, 22 L.Ed.2d 162 (1965), its application is clearly not limited to those situations. Thus, in *Natco Theatres, Inc. v. Ratner,* 463 F.Supp. 1124 (S.D.N.Y.1979), a party brought suit seeking a declaration of a licensing ordinance's invalidity without having first been subjected to the sanctions of the ordinance and without even having attempted to secure a license. The court, relying in part on *Freedman,* distinguished *St. Martin's Press,* and found the claim ripe for adjudication. In *Natco,* as here, first amendment rights were at stake. As here, there was no question that the statute applied to the challenged conduct. And, as here, the defendants had taken affirmative action indicating that they believed the proposed conduct was barred by the ordinance. Quoting *Steffel v. Thompson,* 415 U.S. 452, 459, 94 S.Ct. 1209, 1215–16, 39 L.Ed.2d 505 (1974), the *Natco* court ruled:

> Under such circumstances, this Court does not feel it "necessary that [plaintiff] first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." . . .
> Plaintiff has presented this Court with a claim which "cannot be characterized as imaginary or speculative."

463 F.Supp. at 1127.

We too do not believe that the plaintiff must take that last remaining step which would eliminate all doubt as to the action's ripeness, *i. e.,* canvass without a license and risk arrest.

What we have said about the factual background of this case also serves to distinguish *NYPIRG v. Town of Hempstead, supra.* There, the same plaintiffs that are prosecuting the instant action sought to enjoin enforcement of two villages' solicita-

tion ordinances. One of those village's ordinances contained a licensing provision. Judge Neaher found that the action was not ripe. Critically, he relied in part on the fact that the "defendants . . . have done nothing more than inform plaintiffs that they [were] expected to comply with the provisions of the ordinance." It seems clear that the argument for ripeness is much stronger here, where as we have previously noted, the plaintiff was affirmatively denied permission to canvass.

Having determined that the action is justiciable, we turn to the merits.

■   As we noted above, ordinance 6.7(c) authorizes the Mayor to issue a license to solicit if the Village's Board "is satisfied that the purpose of the solicitation is in the best interests of the Village and the public." Plaintiff claims that the ordinance is void for vagueness and impermissibly chills first amendment rights since it provides that the decision of whether to grant a license rests not on the application of definitive standards but rather solely on the unbridled discretionary determination of the Village. We agree.

■   We note first that the door-to-door canvassing which the plaintiff wishes to conduct is clearly protected by the first amendment, *see, e. g., Hynes v. Mayor of Oradell,* 425 U.S. 610, 96 S.Ct. 1755, 48 L.Ed.2d 243 (1976); *Martin v. City of Struthers,* 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed. 1313 (1943); *Schneider v. New Jersey,* 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939), notwithstanding the fact that it has some "commercial" overtones in that money is being solicited, *see, e. g., Schneider v. New Jersey, supra; Citizens for a Better Environment v. City of Park Ridge,* 567 F.2d 689, 691–92 (7th Cir. 1975); *Citizens for a Better Environment v. Village of Elm Grove,* 462 F.Supp. 820, 822–23 (E.D.Wis. 1978). Of course such activity is not absolutely immune from reasonable regulation. *See, e. g., Hynes v. Oradell, supra,* 425 U.S. 616–17, 96 S.Ct. at 1758–59, 48 L.Ed.2d 243. However, a licensing regulation which "vest[s] in municipal officials the undefined power to determine what messages resi-

dents will hear," *id.* at 617, 96 S.Ct. at 1759, cannot withstand constitutional scrutiny.

In *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969), the Supreme Court was confronted with a challenge to a city ordinance which prohibited "parade[s], procession[s] or other public demonstration[s]" without a permit. The ordinance provided that the city commission was to grant the permit "unless in its judgment the public welfare, peace, safety, health, decency, good order, morals or convenience require that it be refused." *Id.* at 149–50, 89 S.Ct. at 938. The Court found the ordinance unconstitutional:

> There can be no doubt that the Birmingham ordinance, as it was written, conferred upon the City Commission virtually unbridled and absolute power to prohibit any "parade," "procession," or "demonstration" on the city's streets or public ways. For *in deciding whether or not to withhold a permit, the members of the Commission were to be guided only by their own ideas of "public welfare, peace, safety, health, decency, good order, morals or convenience." This ordinance as it was written, therefore, fell squarely within the ambit of the many decisions of this Court over the last 30 years, holding that a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective, and definite standards to guide the licensing authority, is unconstitutional.* "It is settled by a long line of recent decisions of this Court that an ordinance which, like this one, makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official—as by requiring a permit or license which may be granted or withheld in the discretion of such official—is an unconstitutional censorship or prior restraint upon the enjoyment of those freedoms." *Staub v. City of Baxley*, 355 U.S. 313, 322 [78 S.Ct. 277, 282, 2 L.Ed.2d 302] (1958).

*Id.* at 150–51, 89 S.Ct. at 938–39 (emphasis added) (citations omitted). In light of the "long line" of cases referred to, *see, e. g. Cantwell v. Connecticut*, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940); *Schneider v. State, supra*, the ordinance at issue, which allows officials to deny a license solely on the basis of their determination that the desired solicitation is not "in the best interests of the Village and the public" without narrow, objective and definite standards, is unconstitutional.

■ Defendants argue that even if the licensing provisions of 6.7 are unconstitutional, portions of ordinance 6.3 may still be valid. That is, they appear to contend that if the licensing requirement contained in ordinance 6.3 were excised, the balance of the ordinance withstands constitutional scrutiny. We cannot agree.

Without application of the licensing requirement, organizations still could not conduct door-to-door solicitations unless they either (1) obtained the prior permission of the homeowner, 6.3(a), or (2) used as canvassers individuals who resided within the Village for six months, 6.3(b). Neither of these limitations is constitutional.

As to the requirement that the prior consent of the homeowner be obtained, we believe that *Martin v. Struthers, supra*, is dispositive. There, the Court struck down an ordinance which flatly prohibited individuals from knocking on a door to "summon the inmate . . . of any residence to the door for the purpose of receiving . . . handbills, circulars or other advertisements they . . . may be distributing." 319 U.S. at 142, 63 S.Ct. at 863. Justice Black, writing for the Court, noted first the immense societal importance of permitting door-to-door canvassing:

> While door to door distributers of literature may be either a nuisance or a blind for criminal activities, they may also be useful members of society engaged in the dissemination of ideas in accordance with the best tradition of free discussion. The widespread use of this method of communication by many groups espousing various causes attests its major importance. "Pamphlets have proved most effective instruments in the dissemination of opinion. And perhaps the most effective way

of bringing them to the notice of individuals is their distribution at the homes of the people." *Schneider v. State*, supra, 308 U.S. 164, 60 S.Ct. 152 . . . . Door to door distribution of circulars is essential to the poorly financed causes of little people.

319 U.S. at 145–146, 63 S.Ct. at 864–65. In view of the "vital" importance of door-to-door solicitations, "to the preservation of a free society" and the fact that the "dangers of distribution can so easily be controlled by traditional legal methods, leaving to each householder the full right to decide whether he will receive strangers as visitors," the Court found that the ordinance at issue could "serve no purpose but that forbidden by the Constitution, the naked restriction of the dissemination of ideas." *Id.* at 146–47, 63 S.Ct. at 865.

The "traditional legal methods" referred to by Justice Black were those trespassing statutes which "punishe[d] persons who enter onto the property of another *after having been warned by the owner to keep off.*" *Id.* The statute at issue was faulty, however, since it "in effect, makes a person a criminal trespasser if he enters the property of another for an innocent purpose without an explicit command from the owners to stay away." *Id.* at 148, 63 S.Ct. at 865–66.

The requirement that an individual receive the prior consent of the homeowner before he may canvass in Garden City similarly "makes a person a . . . trespasser if he enters . . . property . . without an explicit command from the owners to stay away." Moreover, to require prior consent is to require a canvasser to contact individual homeowners prior to canvassing by some other means, perhaps by the mails or telephone. To impose that added burden on those "little people" with "poorly financed causes" would be to effectively prohibit them from soliciting altogether. First Amendment rights may not be so restricted.

Finally, as to the alternative requirement that the individual actually conducting the canvassing be a bona fide resident of the Village for six months prior to the canvassing, we have little doubt that it too is unconstitutional. As plaintiff points out, such a provision discriminates against non-residents and deprives them of a fundamental right in a manner violative of the Equal Protection Clause of the Fourteenth Amendment. *See, e. g., Dunn v. Blumstein*, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972); *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969).

■ The ordinances at issue being unconstitutional, the plaintiffs are entitled to a preliminary injunction restraining the defendants from enforcing their provisions, *see, e. g., Natco Theatres, Inc. v. Ratner*, *supra*, since their application clearly causes irreparable injury, *see, e. g., Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 2690, 49 L.Ed.2d 547 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury"); *Wolff v. Selective Service*, 372 F.2d 817 (2d Cir. 1967).[8]

III. *NYPIRG v. Village of Lawrence*

■ Beginning in April 1978, Downey, on behalf of NYPIRG, contacted officials of the Village of Lawrence requesting permission to canvass the community. On January 24, 1979, Peter W. Overs, Village Clerk-Treasurer wrote Downey the following letter:

With reference to your letter of January 4, 1979 requesting permission to conduct a door-to-door canvass in the Village of Lawrence, please be advised that the Village prohibits solicitation of any kind or character and I therefore must deny your request.

Be further advised that this prohibition is strenuously enforced.

The ordinance which the defendants claim give them the authority to prohibit the canvassing and which the plaintiff challenges is section 391.4 of chapter 9 of the Village ordinances. This section provides:

---

**8.** The defendants' motion to dismiss the complaint, see note 4 *supra*, is denied.

Except as provided in Section 32 of the General Business Law, and except as provided by the Constitution or statutes of the United States of America having forces superior to the ordinances of the village, no hawking or peddling of foodstuffs or merchandise of any kind shall be permitted within the Village of Lawrence.

Defendants, as in the Village of Garden City case, claim that the action is not ripe because plaintiff has neither attempted to canvass nor been prosecuted under the ordinance. We need not linger long on this point. The statement in Over's letter that the soliciting prohibition is "strenuously enforced" can hardly be interpreted as anything other than a "threat" that NYPIRG would be prosecuted under the ordinance should it violate its strictures. A threat of enforcement having been made, the action is ripe. *See Steffel v. Thompson, supra*, 415 U.S. 452 at 459, 94 S.Ct. 1209 at 1216, 39 L.Ed.2d 505 at 514.

Nor must we tarry over defendant's argument that the ordinance is constitutional because it prohibits commercial activities and not speech and that it is being applied here to the plaintiff's proposed "selling of ideas." Memorandum of Law, p. 3. We recognize that the Supreme Court has upheld ordinances barring door to door soliciting for commercial purposes. *See Breard v. Alexandria*, 341 U.S. 622, 71 S.Ct. 920, 95 L.Ed. 1233 (1951). However, whatever vitality *Breard* may still have, *see NYPIRG v. Town of Hempstead, supra*, at 8–9, and cases cited therein, to purely commercial activities, the defendants can find no comfort in its holding on the facts before us. The plaintiffs proposed activities, while involving some monetary solicitations, are clearly focused on the dissemination and not the "sale" of ideas. To prohibit flatly the discussion of issues of public concern and the circulation of petitions is clearly unconstitutional under the holdings of such cases as *Martin v. Struthers, supra*. It makes no difference that these activities are coupled with requests for donations and the procurement of membership fees. *See Citizens for a Better Environment v. City of Park Ridge*, 567 F.2d 689, 691–92 (7th Cir. 1975).

Defendants are preliminarily enjoined from enforcing the provisions of ordinance 391.4 against NYPIRG.

IV. *NYPIRG v. Village of Roslyn Estates*

According to the complaint and Downey's affidavit, NYPIRG, beginning in April 1978, attempted to secure permission to canvass in the Village of Roslyn Estates. On February 2, 1979, following receipt of a letter dated January 25, 1979, which reiterated the request and threatened legal action if no response was forthcoming, Marie J. Pariante, the Village Clerk, wrote Downey, advising him that NYPIRG's prior communications had not been received and that

[h]ad [they] been received, you would have been forwarded the following notice: Door-to-door solicitations are prohibited in the Village of Roslyn Estates no matter how worthy the cause. All charitable solicitations are made through a civic organization, the Association of Roslyn Estates in its annual Charity Drive.

Plaintiff claims that the defendants' authority to refuse NYPIRG permission to canvass is found in local ordinance number 5, entitled "Prohibiting Peddling and Soliciting Without a Permit." Defendants do not dispute this point; indeed, Ms. Pariante in an affidavit states that her letter "quoted in part" from that ordinance. Interestingly, however, contrary to Ms. Pariante's interpretation of the ordinance in her letter, it does not, by its terms, flatly prohibit door to door solicitations. Rather, it provides that "it shall be unlawful for any person *without a license to*:

a) hawk, vend, peddle, or solicit orders for the purchase or sale of goods, wares, merchandise or other commodities . . . by going from house to house within the . . . village (Section I);

b) *to distribute* or peddle *hand-bills, pamphlets, tracts* or advertising matter *of any character whatsoever . . .* by going from house to house within said village (Section II) (emphasis added);

c) *to solicit . . .* by going from house to house . . . *contributions or subscriptions of any kind whatsoever. . . .* (Section III) (emphasis added).

Section VI of ordinance 5 gives the Village Clerk the authority to issue the licenses required by the ordinance upon payment of a $10.00 fee. Section VI goes on to state: *"No license shall be issued to any person whom the Village Clerk shall deem for any reason unfit* or against whom any justifiable complaint may have been submitted, or whose conduct may have been objectionable to the residents of the Village. . . ."* (emphasis added).[9]

In addition to these sections which deal with the licensing requirement, section IV of the ordinance—the section which Ms. Pariante may have been referring to in her letter and affidavit—states that

No person shall . . . enter upon the property of any person . . . or seek admission at the house . . . of any person . . . for the purpose of selling, or offering for sale, or soliciting orders for the sale of any goods, wares or merchandise, or for the purpose of soliciting subscriptions for any book, publication, paper, magazine or periodical . . . without the previous consent or permission of the owner or occupant thereof.

Plaintiff challenges the constitutionality of those sections of ordinance 5 which we have quoted (I, II, III, IV, VI), and seeks a preliminary injunction against their en-

forcement. Defendants, unlike those in the other two cases before us, have not argued that the action is not ripe.[10] Indeed, they have not even argued that the challenged provisions are constitutional. Rather, they contend that the issuance of a preliminary injunction would be inappropriate since, in their view, plaintiff has not shown that it would be irreparably damaged if an injunction does not issue. We must reject this argument.

As we noted above, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 2690, 49 L.Ed.2d 547 (1976). It will not do to argue, as defendants do, that no irreparable injury can be suffered here because "[i]f NYPIRG is prevented from proceeding door-to-door to solicit funds, there are perhaps scores of other available media approaches they may take. To name but a few: newspaper advertisements, radio advertisements, direct mailings and television commercials." Memorandum of Law, p. 8. We have not been cited to any authority nor are we aware of any that would permit the total abridgement of one form of constitutionally protected communication simply because there are alternative means of communication possibly available. *Cf. Lloyd Corp. v. Tanner,* 407 U.S. 551, 567, 92 S.Ct. 2219, 2228, 33 L.Ed.2d 131 (1972) (5–4 decision). Moreover, as we have pointed out before, door-to-door soliciting may, in many instances, be the only form of communication practically available to an individual. In short, if the plaintiffs are being improperly restrained from exercising their First Amendment rights, they are entitled to a preliminary injunction.

---

**9.** Section VIII of the ordinance provides: "Any person violating the provisions of this ordinance or any part thereof, shall be liable for a forfeit and pay a penalty of not exceeding $100 for each offense." Section IX provides that "[a]ny violation of this ordinance or any part thereof shall constitute disorderly conduct and any person violating the same shall be, and hereby is declared a disorderly person."

**10.** Were the question raised, we would find the action ripe for adjudication. As in the Village

of Garden City case, there is no question that the defendants interpret the statute as applying to the plaintiff. And, as in that case, its request for permission to canvass has been denied. As we stated in regard to that action, it would seem inequitable to require the plaintiff to proceed at its own risk in disregard of the ordinance's provisions before the constitutional challenge could be found justiciable. *See Natco Theatres, Inc. v. Ratner, supra.* But *see NYPIRG v. Town of Hempstead, supra.*

In view of what has been said before, we have little doubt that the ordinance at issue here cannot be constitutionally applied to the plaintiff's proposed activities. Its licensing provision, granting the Village Clerk unbridled discretion in determining who should be issued a license, suffers from the same infirmity as did the ordinance at issue in the Village of Garden City case. Similarly, as we stated in our discussion of that ordinance, the Village cannot condition the right to solicit on NYPIRG's obtaining the prior consent of homeowners.

The defendants are preliminarily enjoined from enforcing the provisions of ordinance 5 against the plaintiff.

### V. Conclusion

For the reasons which we have set forth, the defendants in all three cases are preliminarily enjoined from enforcing the challenged ordinances against the plaintiff. Normally, a preliminary injunction is issued to preserve the status quo pending the outcome of a trial on the merits. *See generally* 11 Wright & Miller, Federal Practice and Procedure § 2947. In the instant cases, however, where there do not appear to be any disputed questions of fact, we cannot see what purpose a "trial on the merits" would serve. Therefore, because of our belief that the challenged ordinances are unconstitutional, we can see no reason why a final judgment, permanently enjoining the ordinances' enforcement should not be entered.

While there is authority "permit[ting] the trial . . . court to decide a case on the merits whenever the evidence on the preliminary injunction motion does not reveal any conflict of material fact that justifies a full trial on the merits," *see id.* § 2950, p. 490 and cases cited, "the approach [has been] questioned . . . on the ground that in effect the court is rendering summary judgment without giving the advance notice or the hearing that Rule 56 requires." *Id.* at p. 492. In view of the possibility that there may be material factual questions of which we are unaware, therefore, the defendants should be given an opportunity to show the existence of such questions prior to the entry of final judgment. Accordingly, the matter is being placed on the calendar for September 7, 1979 at 10:00 a. m., at which time the parties will present their views as to whether there are any factual questions which would make the entry of final judgment on the papers presently before the court inappropriate. Settle judgment on two (2) days' notice, five (5) days by mail, on September 7, 1979.

SO ORDERED.