**NEW YORK COMMUNITY ACTION NETWORK, INC., Paul Hill, Adrienne Esposito and Jeffrey D. Fullmer, Plaintiffs,**

v.

**TOWN OF HEMPSTEAD and Daniel M. Fisher, Jr., as Clerk of the Town of Hempstead, Defendants.**

No. CV–84–3513.

United States District Court,
E.D. New York.

Oct. 18, 1984.

Estroff, Waldman & Poretsky by Mark S. Olinsky, New York City, for plaintiffs.

W. Kenneth Chave, Jr., Hempstead, N.Y., for defendants.

## MEMORANDUM AND ORDER

SIFTON, District Judge.

This action, brought by a citizens' canvassing organization under 42 U.S.C. § 1983, alleges violations of the first, fifth and fourteenth amendments of the Constitution of the United States by the Town of Hempstead in its enactment and enforcement of an anti-solicitation ordinance, Chapter 118 of the Code of the Town of Hempstead. The complaint also alleges a violation of Article 1 of the New York Constitution. Jurisdiction is based on 28 U.S.C. §§ 1331 and 1443.

This matter first came before the Court on plaintiffs' motion for a preliminary injunction barring the enforcement of Chapter 118 of the Code of the Town of Hempstead, pursuant to Rule 65 of the Federal Rules of Civil Procedure. In particular, plaintiffs asked this Court to enjoin application of § 118–11 so that they might continue to canvass and solicit in the Town of Hempstead between the hours of 7:00 and 9:00 p.m.

Pursuant to agreement of the parties, trial of the action on the merits before the undersigned sitting without a jury was consolidated with the hearing on plaintiffs' application as permitted by Rule 65(a)(2) of the Federal Rules of Civil Procedure. Based on the evidence presented at the hearing, including, pursuant to agreement of the parties, the undisputed facts contained in each side's affidavits on the application for preliminary relief, I conclude that plaintiffs are entitled to injunctive relief. What follows sets forth the findings of fact and conclusions of law on which that determination is based as required by Rules 65 and 52(a) of the Federal Rules of Civil Procedure.

Plaintiff, New York Community Action Network, Inc. ("NYCAN"), is a not-for-profit corporation organized under the laws of the State of New York and accorded exempt status under § 501(c)(4) of the Internal Revenue Code. Its stated purpose, as specified in its by-laws, is "to increase the power of low and moderate income people through collective action in a democratic non-violent manner." Its activities include lobbying in state and local legislative bodies, community organizing, preparation of research reports, and distribution of literature. Since 1983 NYCAN has grown to a membership of 17,000. Each member receives a bi-monthly newsletter. Plaintiffs Esposito and Fullmer are NYCAN canvassers. Plaintiff Hill is their supervisor.

The primary vehicle by which NYCAN performs its activities including fund raising is through door-to-door canvassing. NYCAN uses canvassing to distribute literature, to collect signatures for petitions, to disseminate its views, and to raise funds.

NYCAN's canvassers are paid employees who must follow the NYCAN Canvassing Policy Handbook. Almost all canvassing is done between 4:00 and 9:00 p.m. As a result of its canvassing, NYCAN raised approximately $962,000 in 1983. This is the bulk of the source of its operating funds, since the total amount raised from non-canvassing sources was $72,000.

The Town of Hempstead is located in Nassau County and has a population of approximately 760,000 people. This is slightly more than one-half of the population of Nassau County and one-third of the population of the combined Nassau and Suffolk counties. NYCAN considers the residents of Hempstead an important target group because two of its principal issues in 1983 were clean-up efforts of a toxic waste dump site near Hempstead and opposition to the rate increases sought by the Long Island Lighting Company.

The Town of Hempstead has allowed another public interest canvassing organiza-

tion, the New York Public Interest Research Group ("NYPIRG") to be exempted from the challenged ordinance. Pursuant to a June 1980 written agreement signed by the Hempstead Town Clerk and the NYPIRG Canvass Director, NYPIRG is allowed to canvass until 9:00 p.m. In accordance with that agreement, NYPIRG provides the Town of Hempstead with the names and addresses of its canvassers and requires all its canvassers to carry suitable identification. NYPIRG now regularly canvasses in Hempstead. NYCAN is willing to enter into a similar agreement and provide the Nassau County police with notice as to the areas in which its canvassers will operate on a given night.

This dispute grew out of the following events. In March 1984, one NYCAN canvasser was threatened with arrest by a Nassau County police officer. In April 1984, another NYCAN canvasser was arrested while canvassing in the evening.[1] As a result of these incidents, NYCAN suspended its canvassing in Hempstead and on April 12, 1984, held a meeting with Town Attorney W. Kenneth Chave. Representing NYCAN were its Executive Director and Canvassing Director. After that meeting negotiations went forward to attempt to allow the canvassing to continue. The initial intention behind the negotiations was to enter into an agreement similar to the one between NYPIRG and Hempstead. On July 6, 1984, Deputy Town Attorney Daniel P. McCarthy advised NYCAN that the Town Board would consider adopting an agreement at their meeting on July 24, 1984, to allow NYCAN to canvass until 9:00. On July 25, 1984, Mr. McCarthy informed NYCAN's attorney that the Town Board had considered the proposed agreement but decided not to adopt it. NYCAN has not resumed canvassing in Hempstead.

Section 118-11 of the Town Code makes it unlawful to canvass "after one-half hour before sunset or 7:00 p.m. prevailing time, whichever is earlier."[2] Other pertinent provisions of the ordinance include § 118-2(A), making it unlawful to canvass without a license, and § 118-4(C), which provides the Town Clerk discretion to grant a license upon determining that the applicant is a "fit and proper person." Section 118-8 creates certain exemptions discussed more at length below, and § 118-11(A) makes it unlawful to canvass without first obtaining "the express invitation or permission" of the resident. Each violation of the ordinance is punishable by a fine of $250 and/or imprisonment for a period of 15 days.

■ It is beyond question that door-to-door canvassing of the sort here at issue, notwithstanding the fact that the canvassers solicit funds, is protected by the first amendment. *Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980). Indeed, previously in this Court, three towns in Nassau County were enjoined from enforcing ordinances that prohibited door-to-door canvassing because they were found to be unconstitutional. *New York Public Interest Research Group ("NYPIRG") v. Village of Roslyn*, 498 F.Supp. 922 (E.D.N.Y.1979). Justice Black, writing for the Court in *Martin v. Struthers*, 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed. 1313 (1943), described the importance of the activities that plaintiffs seek to conduct:

"[A]s every person acquainted with political life knows, door to door campaigning is one of the most accepted techniques of seeking popular support, while the circulation of nominating papers would be greatly handicapped if they could not be taken to the citizens in their homes. Door to door distribution of circulars is essential to the poorly financed causes of little people.

"Freedom to distribute information to every citizen wherever he desires to receive it is so clearly vital to the preservation of

---

**1.** According to plaintiffs, the canvassers were both black and were canvassing in a white neighborhood.

**2.** Thus, during the winter months, under § 118-11, all canvassing would have to end around 5:00 p.m.

a free society that, putting aside reasonable police and health regulations of time and manner of distribution, it must be fully preserved. The dangers of distribution can so easily be controlled by traditional legal methods, leaving to each householder the full right to decide whether he will receive strangers as visitors, that stringent prohibition can serve no purpose but that forbidden by the Constitution, the naked restriction of the dissemination of ideas."

*Id.* at 146–47, 63 S.Ct. at 865.

This case is distinguishable from *NY-PIRG, supra,* in that, here, the Town of Hempstead does not have a flat ban on door-to-door canvassing. Rather, Section 118–8 of the Town Code limits canvassing after one-half hour before sunset or 7:00 p.m., whichever is earlier. This, argues the Town of Hempstead, is a reasonable time, place and manner regulation designed to protect its citizens from undue annoyance and crime, which the town argues is more likely to occur after dark.

 Hempstead is, of course, correct that it has the power to "regulate the activities of canvassers and solicitors if the regulation is in furtherance of a legitimate governmental objective." *Ass'n of Community Organizers for Reform Now (ACORN) v. City of Frontenac,* 714 F.2d 813 (8th Cir.1983); *Hynes v. Mayor of Oradell,* 425 U.S. 610, 617–18, 96 S.Ct. 1755, 1759, 48 L.Ed.2d 243 (1975). However, although Hempstead's alleged justifications are legitimate objectives, the town has not met its burden of establishing the statute's constitutionality by demonstrating that such objectives cannot be met by less intrusive restrictions. *Organization for a Better Austin v. Keefe,* 402 U.S. 415, 419, 91 S.Ct. 1575, 1577, 29 L.Ed.2d 1 (1971); *United States v. O'Brien,* 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1969).

The appropriate standard for determining the constitutionality of time, place and manner regulations of the type here presented is a matter of some disagreement. In *ACORN, supra,* the Eighth Circuit struck down as unconstitutional a city ordinance preventing canvassing between 6:00 p.m. and 9:00 a.m. The test applied was stated as follows:

"Since constitutional principles require that the regulation be narrowly drawn to further the legitimate governmental objective, the proponent of the regulation must demonstrate that the government's objectives will not be served sufficiently by means less restrictive of first amendment freedoms."

714 F.2d at 816 (footnote omitted).

The court found that there were less restrictive means available to the City of Frontenac, namely, enforcement of its penal and trespassing laws and the imposition of identification requirements. In reversing the district court, the circuit court rejected the test used below.

"The district court reasoned that since the regulation was content neutral, that since Frontenac had a legitimate interest in protecting its citizens' privacy and safety, and that since ACORN had ample alternative opportunities to contact the public, the ordinance was a permissible time, place, and manner regulation of ACORN's exercise of its first amendment rights."

*Id.* at 816.

Contrary to *ACORN* is the *Pennsylvania Alliance for Jobs and Energy (PAJE) v. Borough of Munhall,* 743 F.2d 182 (3d Cir.1984), which upheld the constitutionality of four Pennsylvania town ordinances that prohibited door-to-door canvassing after 5:00 p.m. There, the court addressed the issue of what standard to apply in the following language:

"In *Tacynec v. City of Philadelphia,* 687 F.2d 793 (3d Cir.1982), this court considered the standard by which time, place, and manner restrictions of first amendment activities are to be measured. We conclude that the *Heffron* [*v. International Society for Krishna Consciousness, Inc.,* 452 U.S. 640, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981)] 'ample alternative channels of communications' standard applies, unless the regulation in question is content-based. Then the

more stringent 'least restrictive alternative' standard is appropriate because, as Judge Adams noted, of the special 'danger to First Amendment freedoms inherent in a content-based scheme of regulation.' "

*Id.,* at 185.

■ In this Circuit the appropriate test of time, place and manner ordinances is that used in *ACORN:* is the ordinance, whether or not "content based," the least restrictive alternative.[3] *New York City Unemployed and Welfare Council v. Brezenoff,* 677 F.2d 232, 237 (2d Cir.1982). In *Brezenoff,* the court considered a regulation that prohibited welfare organizations from soliciting and seeking contributions from welfare recipients at welfare centers. The court held that the district court had erred by failing to determine "whether the ban is the least restrictive means" of preventing fraudulent solicitation. 677 F.2d at 239. In *Brezenoff, Heffron* was specifically cited for the proposition that a time, place and manner regulation "must be closely related to a significant governmental interest and must be the least restrictive means of serving that interest."[4] 677 F.2d at 237. Under the standard applicable in this Circuit, the enforcement of Hempstead's ordinance must be enjoined since it is neither narrowly tailored to its legitimate ends nor is it the least restrictive of first amendment rights.

The Hempstead ordinance constitutes a blanket prohibition of early evening canvassing with certain exceptions. As noted, this ordinance is burdensome to NYCAN's first amendment interests. In order to adequately get its message across, NYCAN depends upon people being at home. Both sides have presented evidence on the per-

centage of people who will be denied NYCAN's speech if early evening canvassing is prohibited, in the form of a Census Department publication, "Who's Home When" (January 1973). That study shows that between the hours of 8:00 a.m. and 9:00 p.m. the greatest percentage, i.e., 78 percent, of total residents are home between 8:00 p.m. and 9:00 p.m., while over 70 percent of homes have at least one person at home over the age of 14 years between the hours of 4:00 and 7:00 p.m. NYCAN need not, however, rely on one person to communicate its views to other members of the household. Moreover, NYCAN's statistics show that most of its contributions are received between the hours of 7:00 and 9:00 p.m., rather than earlier. In addition, this court can take judicial notice, as the court did in *Connecticut Citizens Action Group v. Southington,* 508 F.Supp. 43 (D.Conn. 1980), that "it is common knowledge that most working people are employed outside the home during the working day until after 6:00 p.m. The hours after six o'clock would encompass the normal evening hours during which prospective household occupants would normally be available to be solicited or canvassed." 508 F.Supp. at 46. The town's blanket prohibition thus intrudes substantially upon the first amendment rights of both NYCAN and those willing to listen to its canvassers, who, because they work during the day, are denied access to NYCAN's speech.

It is also apparent that the ordinance is not narrowly tailored to the town's objectives of preventing crime and protecting citizens from undue annoyance. As to the question of preventing crime, the conclusion of the court in *ACORN* is apposite:

3. Note that, given the statutory exceptions and the NYPIRG exemption, this statute on its face and as applied may be content-based. This argument is made by NYCAN.

4. It is worth noting that the other court in this circuit that has considered a similar case used the standard that the regulation must be narrowly drawn to protect a legitimate community interest and that the regulation must not intrude unduly upon first amendment rights. *Connecti-*

*cut Citizens Action Group v. Southington,* 508 F.Supp. 43 (D.Conn.1980). *Cf. New Jersey Citizen Action v. Edison Township,* No. 84–475 (D.N.J. April 5, 1984). *See Wisconsin Action Coalition v. City of Kenosha,* No. 84–343 (E.D. Wisc. June 5, 1984); *Pennsylvania Public Interest Coalition v. York Township,* 569 F.Supp. 1398 (M.D.Pa.1983); *Citizens for a Better Environment v. Village of Olympia,* 511 F.Supp. 104 (N.D.Ill.1980).

"... Frontenac has a legitimate interest in protecting its residents from crime. This objective can be served satisfactorily by enforcement of the city's application and identification requirements for all canvassers, peddlers, and solicitors. In addition, trespassing, fraud, burglary, or any other offense against a resident or his property may be prohibited and the violator punished under existing penal laws."

*Id.,* 714 F.2d at 818–19 (footnote omitted). Hempstead has not established that this ordinance is necessary because the criminal law inadequately protects the residents of Hempstead. There was no showing of a crime wave or of any positive effect on diminishing crime which the ordinance has had. Furthermore, NYCAN's willingness to give the Nassau County police daily notice as to which areas it will canvass as well as to require its canvassers to carry identification suggests that narrower means could well serve the town's crime prevention objective. The town has thus not met its burden of establishing that the ordinance is narrowly and precisely drawn to meet its legitimate objectives. *Village of Schaumburg v. Citizens for a Better Environment, supra,* 444 U.S. 620, 100 S.Ct. 826, 63 L.Ed.2d 73.

Similarly, preventing annoyance and ensuring the privacy of Hempstead residents can be accomplished by means that are less intrusive on constitutional freedoms. *Schaumburg, supra* at 639, 100 S.Ct. at 837. The town's trespassing laws are a starting point for protecting residents from people who remain on property after the homeowner has stated that he or she wishes to be left alone. Furthermore, a resident cannot only close the door when he or she is not interested in the canvasser's message, the resident can foreclose all soliciting by a sign at the door which so states. The Supreme Court has long recognized a homeowner's right to keep out unwelcomed "speakers" through either closing the door or posting a "no soliciting" sign. *See Rowan v. Post Office Department,* 397 U.S. 728, 90 S.Ct. 1484, 25 L.Ed.2d 736 (1970). The fact that there is a

modicum of annoyance that a homeowner might have to bear to protect NYCAN's rights is a recognized price for the freedom of expression. *Cohen v. California,* 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971). *ACORN, supra.* The blanket prohibition of this constitutionally protected speech is thus not justified on the theory that it is necessary to protect privacy and prevent annoyance.

The town's argument that the purpose of this statute is to prevent crime or annoyance and preserve privacy is also substantially undercut by the extensive list of exceptions. Among specifically exempted groups are religious corporations, educational institutions, social and alumni organizations, newspaper distributors, sellers of fruit, fish or farm products, and representatives of private or public utilities. In addition, as discussed above, NYPIRG has been expressly exempted. In light of the extensive exemptions, it is difficult to determine how this ordinance substantially furthers the interest of ensuring privacy, avoiding crime or otherwise protecting town residents from annoyance.

NYCAN makes several other arguments as to why this statute is unconstitutional. These are that the NYPIRG exemption creates an unconstitutional discrimination, as it represents a preferential treatment of one group's exercise of constitutional rights, *see Members of City Council of Los Angeles v. Taxpayers for Vincent,* — U.S. ——, 104 S.Ct. 2118, 2128–29, 80 L.Ed.2d 772 (1984), and that the statutory exemptions and specifically the exemption for utilities constitute unconstitutional discrimination based on content. *Police Department of Chicago v. Mosley,* 408 U.S. 92, 95, 92 S.Ct. 2286, 2289, 33 L.Ed.2d 212 (1972). NYCAN further argues that the licensing provisions of § 118–4(C), which provide for granting a solicitation license when the town clerk finds "the applicant is a fit and proper person to hold a peddler's license" is an unconstitutional vesting of power in a municipal official over speech. *See Secretary of State of Maryland v. Joseph H. Munson Co.,* — U.S. ——, 104

**1072**

S.Ct 2839, 81 L.Ed.2d 786 (1984). Finally, NYCAN argues that the ordinance's fee requirements are unconstitutional as is the provision in § 118–11(A), making it unlawful to canvass without first obtaining the express invitation or permission of the owner, occupant or lessee. On that latter point, see *NYPIRG v. Village of Roslyn, supra,* in which Judge Mishler held such a requirement unconstitutional. 498 F.Supp. at 930.

All of these arguments have differing but substantial degrees of merit. But, because I find the statute unconstitutional under the standard of *Heffron* and *Brezenoff,* I need not reach them.

 Since I find the hourly restrictions contained in § 118–11 of Chapter 118 of the Code of the Town of Hempstead unconstitutional, their enforcement must be enjoined. The parties are directed to settle an appropriate order on notice. Plaintiffs also request attorney's fees under 42 U.S.C. § 1988. The Court will consider that issue upon subsequent application by the parties.

SO ORDERED.